MARC E. JOHNSON, Judge.
|?DefendantyApp ellant, Rodney Arcen-eaux, appeals a judgment in favor of Plaintiffs/Appellees, Linda Cennett and Sabrina Hopson, from the 24th Judicial District Court, Division “J”. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
Rodney Areeneaux was the owner of rental property located at 1157, 1161 and 1165 Orange Blossom Lane in Harvey, Louisiana. Linda Cennett began leasing Apartment D at 1165 Orange Blossom Lane from Mr. Areeneaux in 2002 and *672 remained there until 2004. Sabrina Hop-son began leasing Apartment B at 1161 Orange Blossom Lane from Mr. Arcen-eaux in 2002 and remained there until 2005.
On November 22, 2004, Plaintiffs[1] filed a Petition for Damages against Consolidated Sewerage District No. 1 of the Parish of Jefferson, the State of |sLouisiana, and the Jefferson Parish Department of Sewerage (collectively referred to as “Consolidated Sewerage District No. 1”) and Mr. Arcen-eaux. The petition alleged that on or about December 4, 2003 and continuing thereafter, the tenants of the apartment complexes were exposed to raw sewage and sewage contaminated soil coming through their toilets, bathroom fixtures, manhole covers, and complex grates, and they were caused to endure stench and smell. It was also alleged that Plaintiffs’ exposure to the raw sewage resulted in various medical problems, such as gastrointestinal and respiratory problems, exposure to helicobacter pylori and Hepatitis A.
On August 18, 2010, Consolidated Sewerage District No. 1 filed a Motion to Preclude Expert Testimony Regarding Damages to exclude the testimony of Plaintiffs’ expert, Anthony Albert of Accu-lab, Inc. On the same date, Consolidated Sewerage District No. 1 also filed a Motion for Summary Judgment, asserting Plaintiffs could not meet their evidentiary burden pursuant to La. R.S. 9:2800. After a hearing on the motion on October 22, 2010, the trial court granted the Motion to Preclude and excluded Anthony Albert’s testimony as an expert. Additionally, the trial court granted the Motion for Summary Judgment as a matter of law and dismissed Consolidated Sewerage District No. 1 from the action. Plaintiffs filed a Motion for New Trial on December 9, 2010 contesting the granting of the motions, and it was denied by the trial court on January 19, 2011.
Mr. Arceneaux filed a Motion for Summary Judgment on June 29, 2011, asserting Plaintiffs could not meet their eviden-tiary burden by proving the existence of any unreasonably dangerous defect on his property. The hearing date for the motion was originally set for September 16, 2011 but was not heard. However, the trial on the merits of the matter was held on August 22, 2011. In its December 16, 2011 judgment, the trial court found Plaintiffs to be credible |4witnesses. Additionally, the trial court found Plaintiffs had endured significant inconvenience and were subjected to disgusting conditions. The trial court found Mr. Arceneaux’s testimony “not so credible,” especially in his assertion that he never received a single complaint from Plaintiffs. The trial court awarded Ms. Cennett $4,000.00 and awarded Ms. Hopson $6,000.00. Both awards were given legal interest from the date of judicial demand until paid, and all costs were assessed against Mr. Arceneaux. Mr. Arceneaux’s Motion for Summary Judgment then became moot. The instant appeal followed.
ASSIGNMENTS OF ERROR
On appeal, Mr. Arceneaux raises the following assignments of error: 1) the trial court was manifestly erroneous in finding him liable when there was no proof to establish he breached any duty he had to Plaintiffs; 2) the trial court was manifestly erroneous in finding him liable when there was no proof to establish his actions were the cause in fact of any damages to Plaintiffs; 3) the trial court was manifestly *673 erroneous in finding him liable when there was no proof to establish damages; and 4) the trial court committed a legal error in awarding damages for mental distress in the absence of any physical damages.
LAW AND ANALYSIS

Issue 1

Mr. Areeneaux alleges the trial court was manifestly erroneous in finding him liable for Plaintiffs’ damages when no proof was presented to establish that he breached any duty to Plaintiffs. Mr. Ar-ceneaux contends there was no evidence adduced that the ditch emitting the smell was located on his property, that he had any control over the ditch, or that the ditch was the subject of a servitude. Additionally, Mr. Areeneaux contends Plaintiffs failed to offer evidence as to what caused the sewage backups into their apartments. He avers sewage backups can | shave many causes, and the backups are not res ipsa situations where there are no other reasonable alternatives for the problem other than a breach of the landlord’s duty to maintain the premises. Mr. Areeneaux also avers there was no testimony presented as to the condition of the pipes or any defects in any pipe or fixture. Without that evidence, Mr. Areeneaux avers Plaintiffs failed to prove a prima fade case that he breached a duty by allowing smelly water to remain in a ditch or that the premises was defective.
La. C.C. art. 2696 provides,
The lessor warrants the lessee that the thing is suitable for the purpose for which it was leased and that it is free of vices or defects that prevent its use for that purpose.
This warranty also extends to vices or defects that arise after the delivery of the thing and are not attributable to the fault of the lessee.
Clearly proof of a defect in the property is an essential element of liability pursuant to La. C.C. art. 2696. Martinez v. Coleman, 00-1827 (La.App. 5 Cir. 4/24/01); 786 So.2d 170, 178. The lessee must prove there was a defect in the premises which caused the damage. Id. (citation omitted). A defect has been defined as a dangerous condition reasonably expected to cause injury to a prudent person using ordinary care under the circumstances. Id. Whether the defendant’s liability is based on La. C.C. art. 2695[2] or La. R.S. 9:3221, a defect in the premises must be shown. Id. at 174 (citation omitted).
In order for a lessee to recover damages from the lessor under this article due to an alleged vice or defect in the leased premises, the lessee must prove by a preponderance of the evidence that a defect existed in the premises and that the 16defect caused the damages. Montecino v. Bunge Corp. Inc., 04-875 (La.App. 5 Cir. 2/15/05); 895 So.2d 603, 606. Proof by direct or circumstantial evidence is sufficient to constitute a preponderance if, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not. Id.
At trial, Plaintiffs presented direct evidence to the trial court through their live *674 testimonies. Ms. Cennett testified that she resided at 1165 Orange Blossom Lane in Apartment D from 2002 through 2004. She presented no physical evidence, e.g., a copy of a lease, to prove she resided in that apartment. Ms. Cennett stated that she noticed a foul smell when she first moved in the apartment; however, she did not know where the smell originated at that time. She further testified that she later noticed that the ditch located about ten to twelve feet away from her window had black, bubbly water in it that smelled “horrible.” Ms. Cennett compared the smell of the water in the ditch to the sewerage in her bathroom.
Ms. Cennett also testified that her toilet backed up and ran over with black water and her sink was “stopped up.” Ms. Cen-nett said the black, sewerage-smelling water would come out of the toilet and spread into the living room and the kitchen. She stated that she complained to Mr. Arcen-eaux about the constant clogging of the sink and the toilet, and he would send a maintenance man to unstop the toilet; however, the problem was never fixed. Ms. Cennett further testified that her apartment still smelled like sewerage, even after she cleaned her apartment with ammonia and other cleaning products.
Ms. Hopson testified that she resided at 1161 Orange Blossom Lane in Apartment B from 2002 through 2005. A copy of Ms. Hopson’s lease agreement was entered into evidence. Ms. Hopson stated there was a ditch located “maybe a |7few feet, but not too far” from her apartment, and the water in the ditch was “dark brownish, black” and smelled. She said she noticed the smelly water for as long as she lived in the apartment. Ms. Hopson testified that her toilets overflowed with water containing feces, and her carpets, furniture and walls were soaked with the water coming from the toilets. Additionally, she stated that raw sewerage backed up into her bathtub. Ms. Hopson also testified that she complained to Mr. Arceneaux about her plumbing problems; yet, the problems were not resolved.
Mr. Arceneaux also testified at the trial. He stated that he owned apartments located at 1153, 1157, 1161 and 1165 Orange Blossom Lane from May 2000 until July 2004. He verified that Ms. Cennett and Ms. Hopson were residents of 1165 Orange Blossom Lane, Apartment D and 1161 Orange Blossom Lane, Apartment B, respectively, and he did enter into lease agreements with them. Mr. Arceneaux testified that a maintenance person, Ronnie Brown, handled minor issues for him at the apartment complexes, and he would get a plumber if a tenant had a major issue. He stated that Plaintiffs never expressed any concerns to him regarding their plumbing problems. Mr. Arceneaux also stated that no plumbing or sewage concerns were raised by Plaintiffs during the inspection prior to the sale of the apartment complexes in 2004, even though both women had the opportunity to express their concerns to the subsequent owner.
A trial court is granted wide discretion in assessing the probative value of evidence and is free to accept or reject, in whole or in part, the testimony of any witness. Gregoire v. Louisiana Dept. of Wildlife and Fisheries, 11-321 (La.App. 5 Cir. 4/10/12); 92 So.3d 932, 935 (citation omitted). The appellate court must not reweigh the evidence or substitute its own factual findings because it would have decided the case differently. Id. Where there are two permissible views of the |sevidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Id.
In its judgment, the trial court found Plaintiffs to be credible witnesses, and *675 they endured significant inconvenience and were subjected to disgusting conditions. The trial court also concluded that Mr. Arceneaux’s testimony was “not so credible,” especially in his assertion that he never received a single complaint from Plaintiffs. It is apparent from its findings that the trial court rejected Mr. Arcen-eaux’s testimony and accepted Plaintiffs’ testimonies regarding the plumbing and sewage conditions of the apartments.
Therefore, after reviewing the testimonies presented to the trial court, we cannot find the trial court was manifestly erroneous in its factual determinations and its ruling that the law and evidence was in favor of Plaintiffs.

Issue 2

Mr. Arceneaux alleges the trial court was manifestly erroneous in finding him liable when there was no proof presented to establish that his actions were the cause-in-fact of any damages to Plaintiffs. Mr. Arceneaux contends there was no evidence or medical testimony adduced that the physical ailments complained of by Plaintiffs were caused by exposure to raw sewage. Thus, Mr. Arceneaux avers Plaintiffs failed to establish a prima facie case against him, and the claims should have been dismissed.
At trial, Ms. Cennett testified she sought treatment with Dr. Morton Brown for stomach problems stemming from the raw sewage exposure in her apartment. Ms. Hopson testified she experienced respiratory problems and contracted H-Pylori from her exposure to the raw sewage in her apartment and sought treatment from different facilities. As previously mentioned, the trial court is free to accept or reject the testimony of any witness, in whole or in part. See Gregoire, supra. | c)Based upon the testimonies presented and the language used in its Judgment, the trial court ultimately concluded Plaintiffs established a prima facie case against Mr. Arceneaux that his actions were the cause-in-fact of Plaintiffs’ damages.
Because the trial court made factual findings based upon the testimonies presented to it, we cannot find the trial court was manifestly erroneous in its ruling on this issue.
Issues 3 and 1[3]
Mr. Arceneaux alleges the trial court was manifestly erroneous in finding him liable when there was no proof presented to establish any physical damages. Mr. Arceneaux contends Plaintiffs did not introduce any doctor’s bills, hospital bills or proof of other medical expenses. Mr. Arceneaux avers the damages awards cannot be upheld because there is no way to discern from the judgment how the awards were determined.
Mr. Arceneaux also alleges the trial court committed a legal error in awarding damages for mental distress in the absence of any physical damages. Mr. Arceneaux contends the trial court clearly made an award for mental anguish without a finding of physical damages when it found Plaintiffs “endured significant inconvenience and were subjected to disgusting conditions.” Mr. Arceneaux avers Plaintiffs could not recover damages for mental anguish in the absence of physical damages, unless there were special circumstances that guaranteed the claim was not spurious, which he contends were not present in this matter. Furthermore, Mr. Arceneaux avers Plaintiffs may not recover damages merely for the fear of being exposed to a dangerous substance.
Compensatory damages are divided into special damages and general *676 damages. Beausejour v. Percy, 08-379 (La.App. 5 Cir. 10/14/08); 996 So.2d 625, 628 (citation omitted). General damages are inherently speculative in nature and cannot be fixed with any mathematical certainty. Id. These include pain and suffering. Id. The plaintiff has the burden of proving the damage he suffered as a result of the defendant’s fault. Id.
The assessment of “quantum,” or the appropriate amount of damages, by a trial judge or jury is a determination of fact, one entitled to great deference on review. Schouest v. Burr, 09-356 (La.App. 5 Cir. 1/12/10); 30 So.3d 1017, 1023 (citation omitted). Appellate courts review the evidence in the light which most favorably supports the judgment to determine whether the trier of fact was clearly wrong in its conclusions. Id.
In its judgment, the trial court awarded Ms. Cennett $4,000.00 plus legal interest in general damages and awarded Ms. Hopson $6,000.00 plus legal interest in general damages. The only findings mentioned in the judgment were the findings that Plaintiffs endured significant inconvenience and were subject to disgusting conditions. The judgment was silent as to the type of general damages awarded. Without further information, we cannot assume the specific type of general damages the trial court intended to award.
After review of the evidence in the light most favorable to the judgment, we do not find the trial court erred in its awards. Because the general damages awarded in this matter are speculative in nature and cannot be fixed with any mathematical certainty, we do not find the trial court was manifestly erroneous.
DECREE
For the foregoing reasons, we affirm the trial court’s awards of $4,000.00 plus legal interest from the date of judicial demand to Ms. Linda Cennett and $6,000.00 plus legal interest from the date of judicial demand to Ms. Sabrina |nHopson against Mr. Rodney Arceneaux. Mr. Arceneaux is to bear the costs of this appeal.

AFFIRMED

. Out of the original plaintiffs that filed the lawsuit, Linda Cennett and Sabrina Hopson were die only remaining plaintiffs in the matter.

. At the time Martinez, supra, was rendered, former La. C.C. art. 2695 provided the following:
The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.
The current version of La. C.C. art. 2696 restates, in part, the principles of Articles 2692 and 2695 of the Civil Code of 1870.

. Because these issues are interrelated, they are being jointly discussed.