STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

DOCKET NUMBER
2024 CA 0695


SCOTT GREEN PROPERTIES, LLC
AND SCOTT GREEN

VERSUS

R. SCOTT RAMSEY, JR., EDWARD ROE,
MAPLE BAYOU HUNTING CLUB, INC. AND
MAPLE BAYOU HUNTING PROPERTIES, INC.


Judgment Rendered: __**FEB 1 3 2025**__


* * * * *

ON APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT, DIVISION G
IN AND FOR THE PARISH OF ST. MARY
STATE OF LOUISIANA
DOCKET NUMBER 135,053

HONORABLE CURTIS SIGUR, JUDGE PRESIDING


* * * * *

David P. Salley                          Attorneys for Plaintiffs-Appellants
John W. Hite III                         Scott Green Properties, LLC
New Orleans, Louisiana                   and Scott Green


David M. Thorguson                       Attorney for Defendant-Appellee
Morgan City, Louisiana                   Edward Roe


S. Patrick Skiles                        Attorney for Defendant-Appellee
Bayou Vista, Louisiana                   R. Scott Ramsey, Jr.

**BEFORE:   WOLFE, MILLER, AND GREENE, JJ.**

WOLFE, J. concurs.

MILLER, J. concurs in the result.

**GREENE, J.**

In this case, the trial court dismissed the plaintiffs' claims against two defendants, finding the claims were prescribed under La. R.S. 12:1502, the prescriptive statute applicable to actions against persons who control business organizations. The plaintiffs appeal the judgment. After review, we reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 10, 2020, Scott Green Properties, LLC and Scott Green (collectively, Mr. Green) filed a Petition for Declaratory Judgment[1] against Edward Roe; R. Scott Ramsey, Jr.; Maple Bayou Hunting Club, Inc. (MBHC); and Maple Bayou Hunting Properties, Inc. (MBHP). Mr. Green alleged that, on February 16, 2017, he entered into a stock sale with Mr. Roe to buy Mr. Roe's MBHC stock for $90,240 and his MBHP stock for $802,218 - a total of $892,458 – and that Mr. Roe delivered the stock certificates to him. According to Mr. Green, he committed to pay the purchase price in monthly installments until a final closing date set for April 30, 2017. He further alleged that the MBHC board of directors approved the stock sale at a February 20, 2017 meeting, at which all shareholders for both MBHC and MBHP were present or represented.

In his petition, Mr. Green further alleged that he paid $241,000 of the purchase price by monthly payments, but stopped paying after that, because Mr. Ramsey, an officer and director of both MBHC and MBHP, refused to provide Mr. Green with corporate financial records and information necessary for Mr. Green to identify the movable items (named by Mr. Green as corporate earnings and receivables) he had purchased. Mr. Green also alleged that, in December 2019, Mr. Ramsey notified him that the "purchase from Roe was cancelled" and that, on April 16, 2020, Mr. Roe texted him that he (Mr. Roe) "was declaring a default and cancelling the deal."

In his petition, Mr. Green prayed for a declaratory judgment recognizing that he was the owner of all of Mr. Roe's MBHC and MBHP stock, subject to Mr. Green's obligation to pay Mr. Roe the remainder of the purchase price. Alternatively, Mr. Green sought a

---

[1] On April 21, 2023, the trial court signed a Consent Judgment granting Mr. Green's motion to file a "First [Supplemental] and Amending Petition for Declaratory Judgment." Although not raised by the parties, we note that the supplemental and amending petition contained in the record is not signed, as is required by La. C.C.P. art. 863.

2

judgment against Mr. Roe for at least $241,000, the amount Mr. Green had already paid to Mr. Roe for the MBHC and MBHP stock. Although Mr. Green did not specifically seek a declaratory judgment against Mr. Ramsey, Mr. Green alleged Mr. Ramsey breached a duty to the corporations by not delivering the records Mr. Green was entitled to receive. (Mr. Green also sought declaratory judgments against MBHC and MBHP, but those claims are not at issue in this appeal.)

On June 5, 2023, the defendants filed a "Peremptory Exception of No Cause of Action Based on Peremption, and, in the Alternative, Peremptory Exception of Prescription."[2] In support of their exception, the defendants claimed that all of Mr. Green's allegations against Mr. Roe and Mr. Ramsey related to conduct by them in their capacities as either officers, directors or shareholders of MBHC and MBHP, and thus, the time limitations for asserting those claims were exclusively governed by La. R.S. 12:1502 and had expired before Mr. Green filed suit. Mr. Green opposed the exception. After a hearing, the trial court signed a judgment on September 18, 2023, granting the defendants' exception as to Mr. Green's claims against Mr. Roe and Mr. Ramsey and dismissing those claims with prejudice.[3] The judgment denied the exception as to Mr. Green's claims against MBHC and MBHP. Mr. Green appeals the adverse judgment.

On appeal, in multiple assignments of error, Mr. Green contends the trial court: (1) erred as a matter of law by applying La. R.S. 12:1502's three-year prescriptive period to his claim against Mr. Roe, because that claim is not one against Mr. Roe in his corporate capacity as an officer, director, or shareholder, but rather for breach of contract against Mr. Roe in his personal capacity, which is subject to ten-year prescription; (2) erred in finding prescription began to run on the date he and Mr. Roe executed the stock sale, rather than on the date Mr. Roe breached the stock sale contract; and (3) erred in finding

---

[2] The defendants' exception is based on La. R.S. 12:1502, which this Court has classified as a hybrid liberative prescriptive statute. *See Wooley v. Lucksinger*, 2006-1140 (La. App. 1 Cir. 12/30/08), 14 So.3d 311, 462, *rev'd on other grds.*, 2009-0571 (La. 4/1/11), 61 So.3d 507. This classification recognizes that the legislature has identified La. R.S. 12:1502 as a prescriptive statute with peremptive attributes, *i.e.*, the claims asserted thereunder are not subject to interruption and suspension. *See Hill v. TMR Exploration, Inc.*, 2016-0566 (La. App. 1 Cir. 6/13/17), 223 So.3d 556, 562-53, *writ denied*, 2017-1163 (La. 10/27/17), 228 So.3d 1227. Herein, we refer to the statute as prescriptive.

[3] At the hearing, the attorneys agreed that the issue before the trial court had been narrowed to prescription.

his claim against Mr. Ramsey was prescribed on its face, when Mr. Green's petition was filed within four months of Mr. Ramsey's breach of his corporate duties.

Conversely, Mr. Roe and Mr. Ramsey contend the trial court properly granted the prescription exception, because La. R.S. 12:1502 applies, and Mr. Green's original petition, filed on August 10, 2020, was filed more than three years after the February 2017 Roe-Green stock sale and more than three years after the April 30, 2017 closing date.

## STANDARD OF REVIEW

Generally, a party urging the exception of prescription bears the burden of proving the prescriptive period has elapsed. *Bates v. City of Denham Springs*, 2022-0853 (La. App. 1 Cir. 4/18/23), 367 So.3d 102, 105. Parties may introduce evidence to support or controvert a prescription exception; in the absence of evidence, however, the court must decide the exception upon facts alleged in the petition with all allegations accepted as true. *See* La. C.C.P. art. 931; *Wilson v. Whitfield*, 2022-0488 (La. App. 1 Cir. 2/24/23), 361 So.3d 512, 515. When the parties do not introduce evidence, as is the case here, the reviewing court simply assesses whether the trial court was legally correct in ruling on the exception. *Id; Alliance Hospitality, L.L.C. v. Esquivel*, 2020-0807 (La. App. 1 Cir. 2/24/21), 322 So.3d 253, 256. Further, we strictly construe prescription statutes, including La. R.S. 12:1502, against prescription and in favor of the obligation sought to be extinguished. *Salemi v. TMR Exploration, Inc.*, 2016-0567 (La. App. 1 Cir. 6/13/17), 224 So.3d 14, 20, *writ denied*, 2017-1161 (La. 10/27/17), 228 So.3d 1227.

## DISCUSSION

The allegations and prayer of the petition determine the true nature of the action and the applicable prescriptive period. *Onstott v. Certified Capital Corp.*, 2005-2548 (La. App. 1 Cir. 11/3/06), 950 So.2d 744, 747. Because Louisiana civil procedure is based on fact pleading, our courts must look to the facts alleged to discover, what, if any, relief is available to the parties. *Id.* Further, a petition's caption does not control the nature of the cause of action alleged, if the allegations support a cause of action different from, or in addition to, that stated in the caption. *See Fromherz v. Bruno*, 206 So.2d 144, 146 (La. App. 4 Cir. 1968), *writ refused*, 208 So.2d 533 (La. 1968). *See also Beall & Thies,*

4

*LLC v. Ciox Health, LLC,* 2018-0418 (La. App. 1 Cir. 12/20/18), 2018 WL 6721727, *1, n.1 (noting that a pleading is governed by its substance rather than its caption and must be construed for what it really is, not for what it is erroneously designated).

## Mr. Green's Claim against Mr. Roe

We first determine the nature of Mr. Green's claim against Mr. Roe and the applicable prescriptive period. Mr. Green's petition pertinently alleges that, on February 16, 2017, he entered into a stock sale with Mr. Roe to buy Mr. Roe's shares of MBHC and MBHP stock for a total of $892,458; Mr. Roe delivered the stock certificates to Mr. Green; Mr. Green paid monthly payments totaling $241,000; Mr. Green stopped paying when Mr. Ramsey refused to provide him with certain records; and, on April 16, 2020, Mr. Roe texted Mr. Green that he "was declaring a default and cancelling the deal."

Accepting the allegations of Mr. Green's petition as true, we conclude the February 16, 2017 transaction between Mr. Green and Mr. Roe was a contract of sale. A sale is a contract whereby a person transfers ownership of a thing to another for a price in money. La. C.C. art. 2439. The perfection of a sale requires the thing, the price, and the consent of the parties. *See Id.* Here, the petition alleges a person (Mr. Roe) transferred ownership of a thing (stock) to another (Mr. Green) for a price in money ($892,458), and it is undisputed that the parties consented to the sale. *Accord Mercer v. Mercer,* 40,995 (La. App. 2 Cir. 5/17/06), 930 So.2d 348, 352 (concluding a perfected sale occurred when one shareholder agreed to pay another shareholder's loan assessment in exchange for the latter shareholder's partnership shares).[4]

A contract is breached when one of the parties fails to perform under the contract. *See* La. C.C.P. art. 1994. A failure to perform results from nonperformance, defective performance, or delay in performance. *Id.* When one party is prevented from complete performance by the act of the other party, he is entitled to regard the contract as broken and sue for breach. *Glassell, Taylor & Robinson v. John W. Harris Associates,* 209 La.

---

[4] On appeal, Mr. Roe and Mr. Ramsey argue for the first time that the February 16, 2017 transaction between Mr. Roe and Mr. Green was a "contract to sell" as defined in La. C.C. art. 2623, with a closing date of April 30, 2017. They contend prescription on Mr. Green's claims began on April 16, 2020, when the sale did not close and expired before Mr. Green filed his suit. As a general rule, appellate courts will not consider issues raised for the first time on appeal. *Geiger v. State ex rel. Dept. of Health and Hosp.,* 2001-2206 (La. 4/12/02), 815 So.2d 80, 86-87. Further, neither Mr. Roe nor Mr. Ramsey introduced evidence in support of their exception demonstrating the significance of the April 30, 2017 closing date and its effect on the stock sale. We decline to address this speculative argument.

5

957, 976, 26 So.2d 1, 7 (1946). Here, the petition alleges that Mr. Green had paid $241,000 of the $892,458 owed on the stock sale, but that on April 16, 2020, Mr. Roe declared a "default" and cancelled the "deal" via text message to Mr. Green. By cancelling the "deal," Mr. Green alleges Mr. Roe prevented him from paying the remainder of the stock sale price owed. Thus, we conclude, notwithstanding the caption and prayer seeking a declaratory judgment, Mr. Green's petition alleges a breach of contract claim against Mr. Roe based on Mr. Roe's cancellation of the "deal."

Personal actions, such as breach of contract, are subject to ten-year prescription, unless otherwise provided by legislation. *See* La. C.C. art. 3499; *Shamrock Management, LLC v. GOM Fabricators, LLC,* 2018-0491 (La. App. 1 Cir. 7/10/19), 2019 WL 3025237, *3, *writ denied,* 2019-01255 (La. 10/21/19), 280 So.3d 1171. Generally, prescription on a breach of contract claim begins to run on the date the contract is allegedly breached. *Roba, Inc. v. Courtney,* 2009-0508 (La. App. 1 Cir. 8/10/10), 47 So.3d 500, 507. Under a ten-year prescriptive rule, Mr. Green's breach of contract claim against Mr. Roe is timely, because Mr. Green has alleged that Mr. Roe breached the contract (by cancelling the "deal") on April 16, 2020, and Mr. Green filed his original petition approximately four months later, on August 10, 2020.

However, our inquiry does not end here. On appeal, Mr. Roe and Mr. Ramsey contend that La. R.S. 12:1502 "otherwise provides" a shorter prescriptive period applicable to Mr. Green's claim against Mr. Roe than that provided by the general rule of La. C.C. art. 3499. Louisiana Revised Statutes 12:1502 provides prescriptive periods for actions against officers, directors, shareholders, and other persons similarly situated. La. R.S. 12:1502(A). The actions to which La. R.S. 12:1502 specifically applies include: (1) actions for "unlawful distribution, return of an unlawful distribution, or for breach of fiduciary duty, including without limitation an action for gross negligence," and (2) actions for "intentional tortious misconduct, . . . intentional breach of a duty of loyalty, . . . intentional unlawful distribution, or for acts or omission in bad faith, or involving fraud, or a knowing and intentional violation of law." *See* La. R.S. 12:1502 (C) and (D). The Fourth Circuit Court of Appeal has generally described these types of claims as "corporate

6

mismanagement claims." *Schwegmann v. White*, 2021-0556 (La. App. 4 Cir. 4/20/22), 338 So.3d 584, 588, *writ denied*, 2022-00801 (La. 9/20/22), 346 So.3d 803.

Mr. Green's petition does not specifically allege that Mr. Roe committed any of the enumerated acts set forth in La. R.S. 12:1502(C) or (D); and, a breach of contract claim is not among the enumerated acts. Although Mr. Roe is indisputably a shareholder of both MBHC and MBHP, his status as a shareholder in these corporations does not automatically mean that *any* action brought against him is subject to the prescriptive periods provided in La. R.S. 12:1502. It is possible to have a claim against an officer, director, or shareholder for actions taken outside of their officer/director/shareholder duties. *See Omni Energy Services Corp. v. Rhyne*, 14-322 (La. App. 3 Cir. 10/15/14), 149 So.3d 1282, 1285, n.1, *writ denied*, 2015-0001 (La. 3/27/15), 162 So.3d 387. Based on the allegations of the petition, and interpreting La. R.S. 12:1502 strictly against prescription, as we are required to do, we conclude that Mr. Green's claim against Mr. Roe is most appropriately classified as a personal action for breach of contract subject to ten-year prescription, rather than a "corporate mismanagement claim" under La. R.S. 12:1502. *See Mercer*, 930 So.2d at 352 (noting that more restrictive prescriptive statutes should be restrained to the particular cases they regulate and to what is expressly included in their dispositions). Thus, finding merit in Mr. Green's first and second assignments of error, we conclude the trial court legally erred in finding Mr. Green's claim against Mr. Roe is prescribed. We reverse the judgment dismissing Mr. Green's claim against Mr. Roe.[5]

### Mr. Green's Claim against Mr. Ramsey

We next address the nature of Mr. Green's claim against Mr. Ramsey and the applicable prescriptive period. Mr. Green's petition pertinently alleges that his purchase

---

[5] We also note that, even if La. R.S. 12:1502 did apply to Mr. Green's claim against Mr. Roe, Mr. Green's petition would still be timely. Prescription on an action under La. R.S. 12:1502, whether that action is brought under Subsection C or D, begins on the date of the alleged act, omission, or neglect, or from the date the plaintiff discovered or should have discovered the alleged act, omission, or neglect. La. R.S. 12:1502(C) and (D); *Robert v. Robert Management Co., LLC*, 2014-0822 (La. App. 4 Cir. 2/11/15), 164 So.3d 922, 934, *writ denied*, 2015-0541 (La. 5/22/15), 170 So.3d 984; *Dhaliwal v. Dhaliwal*, 48,034 (La. App. 2 Cir. 9/11/13), 124 So.3d 470, 482, *writ denied*, 2013-2931 (La. 2/21/14), 134 So.3d 1165. Here, Mr. Roe's alleged misdeed was his April 16, 2020 cancellation of the "deal" via text message to Mr. Green. Because Mr. Green's petition was filed on August 10, 2020, approximately four months after Mr. Roe's text, it is timely under both La. R.S. 12:1502(C) and (D). We specifically reject the defendants' argument that prescription began on February 16, 2017, the date of the Roe-Green stock sale. Until Mr. Roe cancelled the "deal," Mr. Green had no reason to file suit.

7

of stock from Mr. Roe included certain movable assets of the corporations. The petition further alleges that Mr. Roe was dependent on Mr. Ramsey to deliver those records, because it was Mr. Ramsey (an officer and director of both MBHC and MBHP) who maintained the corporate books and records. According to the petition, Mr. Green paid $241,000 of the stock purchase price, but stopped paying after that because Mr. Ramsey refused to provide the records to which Mr. Green alleged he was entitled. Mr. Green's petition alleges that Mr. Ramsey breached a duty to the corporations by not delivering the records.

Accepting these allegations as true, we conclude Mr. Green's claim against Mr. Ramsey is subject to the prescriptive periods set forth in La. R.S. 12:1502. The allegations specifically identify an act by Mr. Ramsey performed in his capacity as the corporate officer or director responsible for disseminating MBHC and MBHP records. *Accord Succession of Tripp*, 55,496 (La. App. 2 Cir. 5/29/24), 387 So.3d 939, 948 (applying La. R.S. 12:1502's prescriptive period to a shareholder's claim because it was clearly based on defendant's actions as an officer of the corporation). However, we conclude the trial court erred in finding that Mr. Green's claim against Mr. Ramsey is prescribed. As we note in footnote 4, prescription on an action under La. R.S. 12:1502, whether that action is brought under Subsection C or D, begins on the date of the alleged act, omission, or neglect, or from the date the plaintiff discovered or should have discovered the alleged act, omission, or neglect. La. R.S. 12:1502(C) and (D); *Robert v. Robert Management Co.*, LLC, 2014-0822 (La. App. 4 Cir. 2/11/15), 164 So.3d 922, 934, *writ denied*, 2015-0541 (La. 5/22/15), 170 So.3d 984; *Dhaliwal v. Dhaliwal*, 48,034 (La. App. 2 Cir. 9/11/13), 124 So.3d 470, 482, *writ denied*, 2013-2931 (La. 2/21/14), 134 So.3d 1165. Here, Mr. Ramsey's alleged misdeed is his refusal to deliver corporate records to Mr. Green. Until Mr. Roe cancelled the "deal" on April 20, 2020, Mr. Ramsey could have provided the subject records to Mr. Green, so prescription did not begin to run until April 20, 2020. Thus, because Mr. Green's petition was filed on August 10, 2020, approximately four months later, it was timely. Finding merit in Mr. Green's third assignment of error, we conclude the trial court legally erred in finding Mr. Green's claim against Mr. Ramsey was prescribed. We reverse the judgment dismissing Mr. Green's claim against Mr. Ramsey.

8

## CONCLUSION

For the above reasons, we reverse the September 18, 2023 judgment, granting the "Peremptory Exception of No Cause of Action Based on Peremption, and, in the alternative, Peremptory Exception of Prescription" as to R. Scott Ramsey, Jr., and Edward Roe, and dismissing the claims asserted by Scott Green Properties, LLC and Scott Green, against R. Scott Ramsey, Jr. and Edward Roe with prejudice. We remand this matter for further proceedings consistent with this opinion. We assess costs of the appeal one-half to R. Scott Ramsey, Jr. and one-half to Edward Roe.

**REVERSED; REMANDED.**